ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| BRENDA GELABERT ORTIZ<br><br>Recurrente<br><br>v.<br><br>RAFAEL LUCIANO QUIÑONES; RAFAEL ALMANZAR SALAZAR<br><br>Recurridos | KLCE202500305 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso núm.: LO2024CV00101<br><br>Sobre: Reposesión de Bienes Inmuebles Apropiados Ilegalmente |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo

**Ortiz Flores, Jueza Ponente**

## RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de abril de 2025.

Comparece la señora Brenda Gelabert Ortiz (Sra. Gelabert; peticionaria) y nos solicita que se revoque la *Resolución Interlocutoria* emitida el 4 de marzo de 2025 por el Tribunal de Primera Instancia (TPI), Sala Superior de Loíza, en cuanto al término para contestar la solicitud de sentencia sumaria emitida. En esta se declaró No Ha Lugar a la *Solicitud de Reconsideración* presentada por la parte peticionaria el 3 de marzo de 2025. La peticionaria solicita, además, que se revoque la *Resolución Interlocutoria* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, en cuanto a las sanciones impuestas a la parte peticionaria dictada el 25 de marzo de 2025. En esta se declaró No Ha Lugar a la *Solicitud de Reconsideración* presentada por la parte peticionaria el 25 de marzo de 2025.

Adelantamos que, por los fundamentos que expondremos a continuación, se deniega la expedición del auto de *certiorari*.

Número Identificador
RES2025_____

2

**I**

La señora Brenda Gelabert Ortiz presentó una *Demanda*[1] el 11 de junio de 2024, en contra del señor Rafael Luciano Quiñones y Rafael Almanzar Salazar*,* Civil Núm. LO2024CV00101 sobre "Reposesión de Bienes Inmuebles Apropiado Ilegalmente". En esta, sostuvo que es propietaria en común pro indiviso, junto con dos (2) miembros de la Sucesión Pablo Gelabert Rosado, de dos (2) inmuebles; una (1) residencia; y otro inmueble comercial, ubicado en el Barrio Torrecilla Baja, Sector La Torre, Municipio de Loíza, Puerto Rico. Adujo que el señor Rafael Luciano Torres (Sr. Luciano; recurrido), quien es primo de la peticionaria, se ha apropiado ilegalmente de los dos (2) inmuebles y los ha rentado al codemandado, Rafael Almanzar Salazar, quien tiene la posesión física de los dos (2) inmuebles y los opera; uno como bar restaurante y otro como residencia. Ante tales circunstancias, solicitó del foro primario que se emitiera sentencia ordenando a la parte recurrida a entregarle la posesión física de los inmuebles y le ordene a pagar todas las rentas que ha pagado Rafael Almanzar Salazar a Rafael Luciano Quiñones por el tiempo que ha estado ocupando y usando los inmuebles.

El 29 de julio de 2024, la parte recurrida presentó *Contestación a Demanda.*[2] Por medio de esta, solicitó que se desestimara la *Demanda* y se condenara a la parte peticionaria al pago de costas y honorarios de abogado por temeridad. El Sr. Luciano alegó que los inmuebles han estado bajo su posesión, a título de dueño, de manera pública, pacífica e ininterrumpida por más de treinta (30) años, por lo que los adquirió por prescripción adquisitiva o usucapión. Así las cosas, la parte peticionaria presentó una *Demanda Enmendada*[3] el 23 de septiembre de 2024 para acumular en el pleito como demandantes a Pablo Gelabert Ortiz y Oraquiles Gelabert Ortiz, hermanos de la Sra. Gelabert.

---

[1] Apéndice del recurso, págs. 1-2.
[2] Apéndice del recurso, págs. 3-6.
[3] Apéndice del recurso, págs. 56-57.

El 31 de enero de 2025, la parte peticionaria presentó ante el foro primario *Solicitud de Sentencia Sumaria en Armonía con la Regla 36.1 de Procedimiento Civil*[4], suscrita bajo juramento por la Sra. Gelabert, mediante la cual solicitó del foro primario que se disponga que los inmuebles son propiedad de la parte peticionaria y le ordene a la parte recurrida a pagar todas las rentas que le ha pagado Rafael Almanzar Salazar a Rafael Luciano Quiñones por el tiempo que ha estado ocupando y usando los inmuebles. Posteriormente, el 19 febrero de 2025, la parte recurrida presentó *Moción para que se Posponga Resolución de Solicitud de Sentencia Sumaria*[5] solicitando que el foro primario pospusiera el resolver la *Solicitud de Sentencia Sumaria* o se denegara en esta etapa de los procedimientos. A tales efectos, el 20 de febrero de 2025, el foro primario emitió *Orden*[6] concediéndole a los demandados veinte (20) días improrrogables, a partir del 31 de mayo de 2025, para replicar la *Solicitud de Sentencia Sumaria*.

El 3 de marzo de 2025, la parte peticionaria presentó *Solicitud de Reconsideración*[7] con relación a la *Orden* extendiendo el término para contestar *Solicitud de Sentencia Sumaria*. En síntesis, solicitó del foro primario que reconsiderara la *Orden* emitida el 20 de febrero de 2025 y ordenara a la parte recurrida que replique la *Solicitud de Sentencia Sumaria* dentro de los veinte (20) días, a partir del 20 de febrero de 2025. Así las cosas, el 4 marzo de 2025, el Tribunal de Primera Instancia emitió *Resolución Interlocutoria*[8] declarando No Ha Lugar a la *Solicitud de Reconsideración* presentada por la parte peticionaria sobre la *Orden* extendiendo el término para contestar la *Solicitud de Sentencia Sumaria*.

Por otra parte, el 13 de febrero de 2025, la parte recurrida presentó *Moción al Amparo de la Regla 34 de Procedimiento Civil*[9]. En esta, alegó que la parte peticionaria estaba citada para una producción de documentos

---

[4] Apéndice del recurso, págs. 117-168.
[5] Apéndice del recurso, págs. 198-202.
[6] Apéndice del recurso, pág. 203.
[7] Apéndice del recurso, págs. 246-248.
[8] Apéndice del recurso, pág. 253.
[9] Apéndice del recurso, págs. 171-197.

a llevarse a cabo el 31 de enero de 2025 y no compareció. A raíz de ello, la parte recurrida solicitó el pago de la suma de $80.00 de honorarios de taquígrafo y $1,500.00 en concepto de honorarios de abogado por violación al descubrimiento de prueba.

El 10 de marzo de 2025, el foro primario notificó *Resolución y Orden*[10] mediante la cual resolvió la *Moción* presentada por la parte recurrida el 13 de febrero de 2025 y le impuso a la parte peticionaria el pago de $80.00 por concepto de rembolso por los gastos de taquígrafo y $200.00 en honorarios de abogado. Posteriormente, el 25 de marzo de 2025, la parte peticionaria presentó *Solicitud de Reconsideración Sobre Sanciones Impuestas*[11]. En síntesis, adujo que los documentos anejados a la *Solicitud de Sentencia Sumaria* constituyen la producción de documentos para la que había sido citada la Sra. Gelabert. Acto seguido, el 25 de marzo de 2025, el foro primario notificó *Resolución Interlocutoria*[12] declarando No Ha Lugar a la *Solicitud de Reconsideración.*

Inconforme, la Sra. Gelabert presentó el 26 de marzo de 2025 un recurso de *certiorari* con los siguientes señalamientos de error:

> **PRIMER ERROR**: Incurrió en error el TPI al ordenar que los demandados contestaran la Solicitud de Sentencia Sumaria 110 días después de que les fue notificada, contrario a lo dispuesto en la Regla 36.3(b) de Procedimiento Civil, la cual dispone que la contestación deberá ser presentada dentro del término de 20 días a partir de su notificación.

> **SEGUNDO ERROR**: Incurrió en error el TPI al sancionar a los demandantes por $80.00 en pago de taquígrafo y $200.00 en pago de honorarios de abogado por alegadamente uno de los demandantes no haber asistido a una producción de documentos cuando los documentos ya se le[s] había producido a los demandados.

La parte recurrida presentó su *Alegato en Oposición* el 14 de abril de 2025, en virtud del cual adujo que el foro primario, en el uso de su discreción, decidió correctamente posponer la evaluación de la *Solicitud de Sentencia Sumaria*, **por ser prematura, ya que los incumplimientos de la parte peticionaria le han impedido a la parte recurrida realizar el**

---

[10] Apéndice del recurso, págs. 273-276.
[11] Apéndice del recurso, págs. 358-360.
[12] Apéndice del recurso, págs. 358-359.

**descubrimiento de prueba el cual concluye el 31 de mayo de 2025**.

Examinado el recurso de *certiorari* y su *Oposición* a este último presentado por la parte recurrida, procedemos a resolver con el beneficio de la comparecencia de ambas partes.

**II**

**A**

El auto de *certiorari* es el vehículo procesal extraordinario "que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior". *Rivera et al. v. Arcos Dorados*, 212 DPR 194, 207 (2023), que cita a *IG Builders v. BBVAPR*, 185 DPR 307, 337-338 (2012). Se trata de un recurso discrecional, para el cual existen unos parámetros que sirven de guía al momento de decidir si debemos expedir o denegar el auto. *IG Builders v. BBVAPR*, *supra*. De esta forma, el asunto que se nos plantee en el recurso de *certiorari* debe tener cabida dentro de alguna de las materias reconocidas en la Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 (Regla 52.1). Particularmente, en cuanto al *certiorari* para revisar dictámenes interlocutorios del foro primario, en su parte pertinente, la Regla 52.1 dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. […] 32 LPRA Ap. V, R. 52.1.

Así pues, a este foro intermedio le corresponde realizar un análisis dual para determinar si se expide o no un auto de *certiorari.* Este examen consta de una parte objetiva y otra parte subjetiva. Por ello, en primer lugar, tenemos que auscultar si la materia contenida en el recurso de *certiorari* tiene cabida dentro de alguno de los asuntos establecidos en la Regla 52.1, toda vez que esta enumera taxativamente bajo qué materias, solamente, se podrá expedir el auto de *certiorari.* En aquellos casos en los que el asunto no esté comprendido dentro de la norma, el tribunal revisor debe negarse a expedir el auto de *certiorari* automáticamente. Superada esta

etapa, analizamos si bajo la discreción concedida a este tribunal revisor mediante la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40 (Regla 40), debemos o no expedir el auto de *certiorari*. Como se sabe, la Regla 40 establece los criterios que debemos tomar en consideración para determinar si expedimos o no un auto de *certiorari*, como sigue:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

A su vez, los foros apelativos "no debemos intervenir con el ejercicio de la discreción de los foros de instancia, salvo que se demuestre que hubo un craso abuso de discreción, perjuicio, error manifiesto o parcialidad". *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), que cita a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Asimismo, con relación a determinaciones interlocutorias discrecionales procesales, no debemos sustituir nuestro criterio por el ejercicio de discreción del tribunal de instancia, "salvo cuando dicho foro haya incurrido en arbitrariedad o craso abuso de discreción". *Meléndez v. Caribbean Int´l News*, 151 DPR 649, 664 (2000). Finalmente, es norma reiterada que al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. A su vez, los foros apelativos no debemos intervenir con las decisiones de los tribunales de instancia, "salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la

interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que [la] intervención en esa etapa evitará un perjuicio sustancial". *Lluch v. España Service Sta., supra*, pág. 745.

**B**

En nuestro ordenamiento jurídico el mecanismo de sentencia sumaria se rige por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V., R.36. Conforme a la Regla 36.1 de Procedimiento Civil, *supra,* R.36.1 para poder adjudicar en los méritos una moción de sentencia sumaria lo que se requiere es que se presente "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente" ya sea sobre la totalidad de la reclamación o parte de esta. Cónsono a esto, la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3 en su inciso (e) se dispone lo siguiente:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente.

Por otro lado, la Regla 36 de Procedimiento Civil, *supra*, R. 36, antes mencionada, establece unos requisitos a ser cumplidos por la parte promovente, así como, por la parte promovida de una moción de sentencia sumaria. Sobre este particular, la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3 en su inciso (b) dispone que la parte promovida de una sentencia sumaria debe presentar la contestación a la moción de sentencia sumaria dentro del término de veinte (20) días de su notificación. No obstante, nuestro ordenamiento jurídico ha establecido que, la evidencia que el promovido presente para derrotar la solicitud de sentencia sumaria por insuficiencia de la prueba puede tomar varias formas. El promovido puede, entre otras cosas, presentar con su oposición una prueba admisible en evidencia o una prueba que pueda convertirse en admisible para demostrar que la moción es prematura porque el descubrimiento es inadecuado, está

a medias o no se ha realizado. *Medina v. M.S. & D. Química P.R., Inc.*,135 DPR 716, 734 (1994). Acoger una moción de sentencia sumaria de forma prematura puede tener el efecto de privar al promovido de sus derechos sin un debido proceso de ley. *Pérez v. El Vocero de P.R.*, 149 DPR 427, 450 (1999).

Además, las propias Reglas de Procedimiento Civil consideran la situación en que el promovido, por una moción de sentencia sumaria, no ha tenido la adecuada oportunidad de conseguir prueba para apoyar alguno de los hechos esenciales que justifican su oposición y proveen al tribunal un mecanismo para remediar la situación. La Regla 36.6 de Procedimiento Civil, *supra*, R. 36.6 dispone que, "el tribunal podrá denegar la solicitud de sentencia, o podrá ordenar la suspensión de cualquier vista para que la parte pueda obtener declaraciones juradas o tomar deposiciones, o conseguir que la otra parte le facilite cierta evidencia, o podrá dictar cualquier otra orden que sea justa". En otras palabras, confrontado el tribunal con una solicitud de sentencia sumaria prematura, éste puede, en el ejercicio de su discreción, posponer la evaluación de la moción o denegarla en esa etapa de los procedimientos. Hay que tener presente que el propósito de las reglas procesales es hacer viable el que los tribunales hagan justicia al resolver las controversias. *Pérez v. El Vocero de P.R.*, *supra*, 451 (1999).

**C**

La Regla 34 de Procedimiento Civil, 32 LPRA Ap. V, R. 34, dispone sobre el trámite para traer a la atención del Tribunal de Primera Instancia las controversias en torno al descubrimiento de prueba entre las partes y provee sobre las órdenes que podrá emitir si la parte se niega a descubrir lo solicitado, las cuales incluyen "todas aquéllas órdenes que sean justas" y se enumeran en la Regla e incluyen desde la <u>concesión de gastos, honorarios, sanciones económicas</u> a las partes o a los abogados, hasta la eliminación de las alegaciones y la anotación de rebeldía. En

cuanto a este particular, la Regla 34.3 (6)(c) de Procedimiento Civil, *supra*, 34.3 (6)(c), provee lo siguiente:

> En lugar de cualesquiera de las órdenes anteriores o adicional a éstas, el tribunal impondrá a la parte que incumpla la orden o al abogado o la abogada que la aconsejó, o a ambos, el pago del importe de los gastos, incluyendo honorarios de abogado o abogada, a menos que el tribunal determine que existía una justificación válida para el incumplimiento o que, dentro de las circunstancias, el pago de los gastos resultaría injusto.

Nuestro ordenamiento jurídico le reconoce a los tribunales, la autoridad para realizar u ordenar cualquier acto que resulte necesario a fin de cumplir a cabalidad con sus funciones. Véase, Ley de la Judicatura de 2003, Ley Núm. 201-2003, art. 2.017, inciso (k). No se puede pasar por alto que la imposición de sanciones constituye una medida propia del manejo del caso, sobre el cual el Tribunal de Primera Instancia tiene amplia discreción con el propósito de lograr una resolución justa, rápida y económica. *Rivera v. Insular Wire Products Corp.*, 140 DPR 912 (1996).

Asimismo, se ha pautado que la imposición de sanciones forma parte del poder inherente de los tribunales para hacer efectiva su jurisdicción y sus pronunciamientos. *Sterzinger v. Ramírez*, 116 DPR 762 (1985). Es decir, "[e]l poder inherente para imponer sanciones permite una flexibilidad para escoger la sanción y ajustarla a los hechos y al propósito que se persigue". R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta ed., San Juan, P.R., 2017, pág. 247.

**D**

Los tribunales de origen son los que están en mejor posición para determinar cómo se debe manejar un caso que esta ante su consideración. *Rebollo López v. Gil Bonar*, 148 DPR 673, 678 (1999). De ordinario, se respetan las medidas procesales que los jueces toman en el ejercicio prudente de su discreción para dirigir y conducir los procedimientos que ante ellos se siguen. Los jueces del Tribunal de Primera Instancia gozan de amplia discreción para gobernar esos procedimientos. *Lluch v. España Service Sta., supra,* pág. 742 (1986). Gozan, además, de amplia facultad para disponer de los procedimientos ante su consideración de forma que

se pueda asegurar la más eficiente administración de la justicia, y están llamados a intervenir activamente para manejar los procesos y dirigirlos de forma tal que se logre una solución justa, rápida y económica de los casos. *Vives Vázquez v. E.L.A.,* 142 DPR 117 (1996)*, Vellón v. Squibb Mfg., Inc.,* 117 DPR 838 (1986).

En ese sentido, se ha resuelto que "los tribunales apelativos no debemos, con relación a determinaciones interlocutorias discrecionales procesales, sustituir nuestro criterio por el ejercicio de discreción del tribunal de instancia, salvo cuando dicho foro haya incurrido en arbitrariedad o craso abuso de discreción". *Meléndez v. Caribbean Intl. News, supra,* pág. 664. Debemos tener presente que los jueces de primera instancia están facultados con flexibilidad para lidiar con la tramitación de los asuntos judiciales. *E.L.A. v. Asoc. de Auditores*, 147 DPR 669, 681 (1999). Si su actuación se funda en una base razonable que no resulta perjudicial a los derechos sustanciales de una parte, debe prevalecer su criterio. *Sierra v. Tribunal Superior,* 81 DPR 554, 573 (1959).

En cuanto a las determinaciones interlocutorias discrecionales procesales, los tribunales apelativos no debemos sustituir el ejercicio de discreción del tribunal de instancia por nuestro criterio, salvo cuando dicho foro haya incurrido en arbitrariedad o craso abuso de discreción. *Meléndez v. Caribbean Int'l News*, *supra*, pág. 664 (2000). Así, de ordinario, los tribunales apelativos no intervienen con las determinaciones de un foro primario relacionadas al descubrimiento de prueba y al manejo del caso, a menos que medie prejuicio, pasión, parcialidad o error manifiesto. *Rivera y otros v. Bco. Popular*, 152 DPR 140, 154-155 (2000). La deferencia al juicio y a la discreción del foro primario está cimentada en que los foros apelativos no pueden pretender disponer ni manejar el trámite ordinario de los casos que se ventilan ante el Tribunal de Primera Instancia. No existe duda de que dicho foro es el que mejor conoce las particularidades del caso y el que está en mejor posición para tomar las medidas que permitan el

adecuado curso hacia su disposición final, en consecución a la búsqueda de la verdad.

**III**

En esencia, la parte peticionaria señala que el foro recurrido erró al ordenar que los recurridos contestaran la *Solicitud de Sentencia Sumaria* 110 días después de que les fue notificada, contrario a lo dispuesto en la Regla 36.3(b) de Procedimiento Civil, la cual dispone que la contestación deberá ser presentada dentro del término de 20 días, a partir de su notificación. Además, sostiene que incurrió en error al sancionar a la parte peticionaria por $80.00 en pago de taquígrafo y $200.00 en pago de honorarios de abogado por uno de los demandantes no haber asistido a una producción de documentos cuando los documentos ya se les había producido a los demandados.

Según discutido, los foros primarios gozan de amplia facultad para disponer de los procedimientos ante su consideración de forma que se pueda asegurar la más eficiente administración de la justicia. Nuestro ordenamiento jurídico le reconoce a los tribunales la autoridad para realizar u ordenar cualquier acto que resulte necesario a fin de cumplir a cabalidad con sus funciones y tienen amplia discreción sobre el manejo del caso con el propósito de lograr la resolución de este de la forma más justa, rápida y económica posible.

En lo que concierne a la sentencia sumaria, debemos recordar que la parte peticionaria estaba citada para una producción de documentos a llevarse a cabo el 31 de enero de 2025 y no compareció. Acorde con lo informado, los incumplimientos de la parte peticionaria le han impedido a la parte recurrida realizar el descubrimiento de prueba el cual concluye el 31 de mayo de 2025. Ante estos supuestos, el foro primario podrá dictar cualquier orden que sea justa para que la parte pueda obtener declaraciones juradas o tomar deposiciones, o conseguir que la otra parte le facilite cierta evidencia. En otras palabras, confrontado el tribunal con una solicitud de sentencia sumaria prematura, este puede, en el ejercicio

de su discreción, posponer la evaluación de la moción o denegarla en esa etapa de los procedimientos.

Por otra parte, reiteramos que la imposición de sanciones forma parte del poder inherente de los tribunales para hacer efectiva su jurisdicción y sus pronunciamientos. Asimismo, constituye una medida propia del manejo del caso, sobre el cual el Tribunal de Primera Instancia tiene amplia discreción con el propósito de lograr una resolución justa, rápida y económica.

En lo pertinente a este caso, el foro primario tiene discreción al sancionar a la parte peticionaria por no haber asistido a una producción de documentos a llevarse a cabo el 31 de enero de 2025, ya que la Regla 34 de Procedimiento Civil, *supra*, R. 34, dispone que el Tribunal de Primera Instancia podrá emitir todas aquellas órdenes que sean justas si la parte se niega a descubrir lo solicitado. Estas incluyen desde la concesión de gastos, honorarios, sanciones económicas a las partes o a los abogados, hasta la eliminación de las alegaciones y la anotación de rebeldía con el fin de cumplir a cabalidad con sus funciones.

Cierto es que la citada Regla 52.1 de las de Procedimiento Civil, *supra*, R. 52.1 nos faculta para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, como excepción, si estas conllevasen un fracaso irremediable de la justicia. Evaluada la petición de *certiorari*, así como las *Órdenes* emitidas por el foro recurrido, se desprende que la parte peticionaria no nos demostró que en el manejo del caso ante la consideración del foro primario se haya cometido un craso abuso de discreción o que actuó con prejuicio y parcialidad, o se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitaría un perjuicio sustancial.

**IV**

Por los fundamentos que anteceden, en el ejercicio de nuestra discreción, denegamos la expedición del recurso de *certiorari* presentado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones